In the
United States Court of Appeals
For the Seventh Circuit

No. 99-4003

ALFREDO AVILES,

Plaintiff-Appellant,

v.

CORNELL FORGE COMPANY,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 96 C 5989--Harry D. Leinenweber, Judge.

Argued November 2, 2000--Decided February 21, 2001

Before HARLINGTON WOOD, JR., RIPPLE and ROVNER, Circuit
Judges.

ROVNER, Circuit Judge.  This is a successive
appeal of an employment discrimination case. The
plaintiff asks us to find that calling the police
to report that a disgruntled employee is waiting
outside the workplace and may be armed is an
adverse action as a matter of law. We decline the
plaintiff's invitation because a truthful, non-
discriminatory report to the police should not
subject an employer to Title VII liability. We
therefore affirm the district court's grant of a
directed verdict at the close of the plaintiff's
evidence.

I.

We will assume familiarity with our prior
opinion in this matter and will repeat only those
facts necessary to understand the issues
presented in this appeal. See Aviles v. Cornell
Forge Co., 183 F.3d 598 (7th Cir. 1999). Alfredo
Aviles sued his employer, Cornell Forge, claiming
that the company subjected him to a hostile work
environment based on his national origin. He also
claimed that Cornell Forge retaliated against him
for filing a hostile work environment claim. In
his complaint, Aviles alleged that shortly after
filing an EEOC charge against Cornell Forge, the
company suspended him for five days, and then

falsely told the local police that Aviles had threatened his supervisor with a gun. According to Aviles, as a result of this false report, the police physically and emotionally harmed him during their investigation. Aviles contended that four police cars and six officers responded to the call, and rousted him from his car with their guns drawn, injuring him in a number of ways before determining that he was, in fact, unarmed. The district court originally granted summary judgment in favor of the employer on both the discrimination and retaliation claims, but for the reasons stated in our earlier opinion, we remanded the case for a trial on the retaliation claim. We held that a false report to the police that Aviles was armed and laying in wait outside the plant could certainly be construed by the fact-finder as a retaliatory action meant to dissuade Aviles from pursuing his claim. We therefore remanded the case for trial on the claim that Cornell Forge retaliated against Aviles by making a false police report.

At trial, Aviles presented evidence that he filed an EEOC claim, and that shortly thereafter, he was suspended from his job. He refused to leave the premises following the suspension and told his supervisors that they could call the police. One supervisor indeed called the police, who escorted Aviles off the property and told him not to return. Despite this warning, Aviles returned to the area later, parking his car approximately one and one half blocks from the entrance to the plant. Although Aviles contended that he returned only to pick up his paycheck, we must take the facts as the district court found them following Aviles' presentation of evidence at a bench trial. Not knowing that Aviles was there for that alleged innocent purpose, someone from the plant called the police again and reported that Aviles was sitting in his car outside the plant entrance. The officer taking the call, knowing that an employee had been removed from the plant under police escort earlier that day, asked the caller if Aviles was armed. The caller replied that he did not know if Aviles was armed but that he might be. Based on that conversation, the police approached Aviles with a great display of force. Aviles testified that in the ensuing altercation, the police injured his arm, causing him pain. After the police had removed Aviles from his car, the dispatcher called the plant back and asked to speak to the supervisor who was involved in Aviles' suspension. At that time, Aviles' supervisor told the dispatcher that Aviles had threatened in the past to kill himself and other employees at the plant with a gun. There was no evidence that the dispatcher passed this statement on to the officers at the scene, and

Aviles presented no evidence that any of these statements were false.

At the close of Aviles' evidence, Cornell Forge moved for a directed verdict. The company argued that Aviles failed to prove an adverse act by his employer, and that he failed to establish a causal link between the protected expression and the adverse action. Cornell Forge also argued that Aviles failed to establish any damages. The district court granted the motion. The court noted first that Aviles had presented no evidence regarding who at Cornell Forge made the call to the police that resulted in Aviles' injuries. The court found that the police dispatcher, not the Cornell Forge caller, raised the issue of the gun, and that there was no evidence that the caller lied when stating he did not know whether Aviles was armed but that he might be. The court held that calling the police and making a truthful report did not constitute an adverse action. The court further found that Aviles failed to prove a causal link between the protected expression and the adverse action. In particular, Aviles failed to show that the employer could have anticipated a violent response by the police, or that Aviles would resist during the investigatory stop and thereby be injured. The court therefore granted Cornell Forge's motion for a directed verdict. Aviles appeals.

II.

On appeal, Aviles contends that calling the police and reporting that a disgruntled employee is armed is an adverse action as a matter of law. Aviles also complains that the district court sua sponte asserted a legitimate reason for his employer's adverse act, even though the defendant had not put on any evidence supporting the so-called legitimate reason. Finally, Aviles claims that he did in fact prove a causal connection between the charge of discrimination and the call to the police with evidence that his supervisor said Aviles was "going to pay," and that he was "going to get" Aviles.

We review the district court's grant of a directed verdict under Federal Rule of Civil Procedure 52. Subpart (c) of that rule provides that, in a bench trial, once a party has been fully heard on an issue, the "court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue." The rule dictates that such a judgment be supported by findings of fact and conclusions of law as required under Subpart (a) of the same

rule. Subpart (a), in turn, specifies that these findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses. The trial judge's statement of his findings of fact and conclusions of law orally in open court following the conclusion of Aviles' evidence is sufficient under the rule. We therefore review the district court's oral ruling for clear error.

In order to make out a claim of retaliation under Title VII, Aviles must prove that (1) he engaged in statutorily protected expression; (2) he suffered an adverse action by his employer; and (3) there is a causal link between the protected expression and the adverse action. Dey v. Colt Construction & Development Co., 28 F.3d 1446, 1457 (7th Cir. 1994). Once a plaintiff makes that showing, the burden of producing a legitimate, nondiscriminatory reason for the adverse action shifts to the employer. If the employer is able to produce such a reason, the burden shifts back to the plaintiff to show that the employer's proffered reason is pretextual and that its actual reason is discriminatory. Dey, 28 F.3d at 1457. The district court found that Aviles engaged in statutorily protected expression when he filed an EEOC charge against Cornell Forge, based on his claim of national origin discrimination. The district court also found that his employer was aware that Aviles had filed this charge. Tr. at 295-96.

But on the issue of adverse action, the district court found Aviles' proof lacking. First, the court noted that the police were called simply to remove Aviles, and that no complaint was filed against him and he was not arrested. Second, the court stated that any injury to Aviles from the police was unforeseeable to Cornell Forge because the company had no reason to know that Aviles would resist the police or that the police would overreact in some way. The court found that the actions taken by Cornell Forge were reasonable under the circumstances. Third, and most importantly for our analysis, the district court found there was no evidence that Cornell Forge lied to the police about whether Aviles was armed. Rather, the only evidence on the issue of whether Aviles had a gun was that the Cornell Forge caller responded to a question from the police dispatcher about whether Aviles was armed by answering that he did not know but that he might be. The court concluded, "So I think it was reasonable for them to say the truth, which is that they didn't know whether he was armed or not." Tr. at 298. The court further found that even if calling the police was an adverse action,

Aviles failed to prove by a preponderance of the evidence that the call was in retaliation for filing the EEOC charge. Tr. at 298-99.

We begin by addressing Aviles' claim that calling the police was an adverse action as a matter of law. Aviles asserts that "[c]alling the police on someone is always an adverse act." Reply Brief at 4. Aviles argues that, although a call to the police may be justified under some circumstances, the mere act of making the call is adverse. Aviles claims that because Cornell Forge flatly denied making the call in pre-trial proceedings, he approached trial with the expectation that he would have to prove the defendant made the call, and did not expect he would also have to prove the falsity of the charge made to the police. He contends that being required to prove the falsity of the statements made to the police in his case-in-chief is tantamount to requiring him to rebut the employer's legitimate, non-discriminatory reason for making the call before the employer has even offered such a reason.

Aviles has misapprehended our earlier opinion. We held that a false report to the police that Aviles was armed and laying in wait outside the plant after threatening his supervisor could certainly be construed as a retaliatory action meant to dissuade Aviles from pursuing his EEOC charge against the company. Aviles, 183 F.3d at 606. In so holding, we clarified that for a current employee, the retaliatory action need not be employment related. We did not go so far as to conclude that a truthful report to the police regarding an employee could be construed as an adverse action. As a matter of common sense, such a holding would be ill-advised. If an employer had to face Title VII liability for truthfully reporting to the police that a disgruntled employee had threatened a supervisor and could be armed, we might discourage employers from taking the most prudent action to protect themselves and others in the workplace. There is no evidence here that the employer singled out a particular ethnic group for its report to the police. Nor did Aviles put on any evidence at all that the report was false. Under these circumstances, we agree with the district court that Aviles failed to prove an adverse action by a preponderance of the evidence. See also Berry v. Stevinson Chevrolet, 74 F.3d 980, 982 (10th Cir. 1996) (malicious prosecution may constitute adverse employment action); Veprinsky v. Fluor Daniel, Inc., 87 F.3d 881, 892 (7th Cir. 1996) (collecting cases).

Nor did the district court sua sponte supply a legitimate reason for the employer's action. The

district court stated that it was reasonable for Cornell Forge to call the police under the circumstances. This finding relates to whether the action was adverse, not whether the employer had a legitimate, non-discriminatory reason for making the call. In essence, the district court was stating that a truthful report to the police is reasonable in the sense that it is not adverse. The court also explained that whether the call was reasonable was related to causation and not to whether the employer had a legitimate, non-discriminatory reason to make the call. The court clarified this at the time of the motion for a directed verdict. After the court stated that no one could be faulted for concluding that Aviles might be outside the plant in order to retaliate against someone, Aviles' counsel argued that the court was supplying the employer with a legitimate reason. The court replied, "No, I think it's whether there's a causal connection. I mean, was he there for his stated reason? I mean, it's for me to determine whether it's more probably true than not true, at least what they thought he was there for." Tr. at 294-95. The court went on to state that if the employer knew Aviles was just there to pick up his check and that he was unarmed, then there would be a basis for finding that Cornell Forge retaliated against Aviles. But the only evidence presented was that the employer made a truthful report to the police about Aviles, and that report was neither adverse nor in retaliation for filing the EEOC charge. We see no clear error in that conclusion.

That leads us to Aviles' last point, that he proved a causal connection with evidence that another employee heard his supervisor say that he was going to get Aviles, and was going to make him pay. The court's rejection of this evidence is just the kind of fact-finding to which we defer on appeal because of the trial court's superior ability to judge the credibility of the witnesses and the strength of the evidence presented. We therefore affirm the district court's grant of a directed verdict in favor of Cornell Forge and against Aviles.

AFFIRMED.